UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                      :

POLYONE CORP.,                      :

                                                      :              CASE NO. 1:10-CV-230

              Plaintiff,                :

                                                      :

vs.                                                    :              OPINION & ORDER
                                                      :              [Resolving Doc. No. 11]

INTERNATIONAL AUTOMOTIVE    :
COMPONENTS GROUP                :
NORTH AMERICA, INC.,           :

                                                      :

              Defendant.               :

                                                      :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this opinion and order, the Court considers Plaintiff PolyOne Corporation's motion for a preliminary injunction. [Doc. 11.] Plaintiff PolyOne moves the Court to enjoin arbitration proceedings between it and Defendant International Automotive Components Group North America, Inc. ("IAC"). In support of its position, PolyOne argues that it did not agree arbitrate the dispute. On March 1, 2010, the Court held a hearing on the Plaintiff's motion. For the following reasons, the Court **DENIES** the Plaintiff's motion for a preliminary injunction.

**I. Background**

This case arises out of a supply agreement between Plaintiff PolyOne and Defendant IAC. PolyOne manufacturers a color concentrate used in the coloring of plastic resin. Defendant IAC produces plastic parts for automobile interiors. In 2007, the parties negotiated two supply

-1-

Case No. 1:10-CV-230
Gwin, J.

agreements for PolyOne to provide a "light camel color concentrate" to IAC. IAC used the concentrate to color plastic pieces provided to the Ford Motor Company. Ultimately, the plastic pieces failed and IAC settled warranty claims by Ford for $2.4 million. Defendant IAC then demanded arbitration against PolyOne, claiming that PolyOne supplied it defective colorant. PolyOne now seeks to avoid the arbitration.

PolyOne and IAC's relevant contractual relationship began when the two entities entered into a supply agreement on February 2, 2007 ("Initial Supply Agreement"). [Doc. 27-2 at 1.] Under this first agreement, PolyOne would provide shipments of the light camel color concentrate to IAC from March 1, 2007, to December 31, 2010. [Id.] The Initial Supply Agreement's terms and conditions did not contain an arbitration provision or any other provision regarding legal rights and remedies. [Id. at 3.] The agreement said that it could only be modified by a signed writing specifically identified as an amendment to the agreement. [Id.] PolyOne began shipping the color concentrate to IAC in April 2007.

Soon after signing this agreement, however, PolyOne and IAC began negotiating a new supply agreement. According to Steven Schneider, who helped negotiate the contract on behalf of PolyOne, IAC's representative asked for the new contract because the company needed an agreement on IAC letterhead. [Tr. at 51.] Defendant IAC had recently acquired the interiors business segment of Lear Corporation, to whom PolyOne had previously sold the colorant. [Doc. 27-3 at 1.]

Similar to the Initial Supply Agreement, the Final Supply Agreement stated that its term would be from March 1, 2007, to December 31, 2010. [Doc. 27-3 at 1.] The agreement also incorporated the IAC's standard terms and conditions. These terms include an arbitration provision, requiring disputes to be arbitrated in Michigan. [Doc. 21-2 at 23.] The Final Supply Agreement also

-2-

Case No. 1:10-CV-230
Gwin, J.

incorporated the Initial Supply Agreement by attaching it as Exhibit C and listing it as an "Existing Agreement" on Schedule 1. [Doc. 27-3 at 3, 8.]

> The Final Supply Agreement contained the following integration clause and order of priority:
>
> IACNA and PolyOne agree that this SA, together with the Orders, the Terms, and those agreements specifically listed on Schedule 1 hereto, each as amended in accordance with its terms, constitute the entire agreement between IACNA and PolyOne with respect to the matters contained herein and therein, supersede all prior oral or written representations and agreements between IACNA and PolyOne with respect to such matters, and replace any and all terms and conditions on or in any quotation(s), invoice(s) or other documents received from PolyOne. In the event of any conflict between the terms and conditions contained in the foregoing documents, the following order of precedence shall apply: (a) this SA, (b) the applicable Orders, (c) the Terms, and (d) the Schedule 1 Agreements.

[Doc. 27-3 at 2.] The parties executed this Final Supply Agreement on October 25, 2007.[1/] [Doc. 27-3.]

Defendant IAC purchased the light camel colorant from April 2007 to September 2008 and used it in plastic parts sold to Ford. In October 2008, however, Ford notified IAC that the parts containing the light camel colorant were breaking. [Doc. 1-3 at 5.] IAC ultimately settled warranty claims by Ford for $2.4 million. [*Id.* at 6.] On January 25, 2010, IAC filed a demand for arbitration against PolyOne, citing the arbitration provision in the IAC's terms and conditions. [Doc. 1-3.]

In response, on February 2, 2010, PolyOne filed the instant case, seeking a judgment declaring that IAC could not compel arbitration. [Doc. 1.] On February 11, 2010, PolyOne filed a motion for a preliminary injunction, enjoining further arbitration proceedings. [Doc. 11.] On February 23, 2010, Defendant IAC opposed the motion. [Doc. 21.] Plaintiff PolyOne replied, [Doc. 24], and on March 1, 2010, this Court held a hearing on the motion. [Doc. 25.]

---

[1/] Although the Final Supply Agreement is dated July 12, 2007, the parties agree that PolyOne did not execute the contract until October 25, 2007.

Case No. 1:10-CV-230
Gwin, J.

## II. Legal Standards & Analysis

A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (quoting *Leary v. Daeschner*, 288 F.3d 729, 739 (6th Cir. 1997)).

In determining whether to issue a preliminary injunction, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet*, 305 F.3d at 573.

These factors are not prerequisites, but are factors that are to be balanced against each other. *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998). Nevertheless, a finding that there is simply no likelihood of success on the merits is usually fatal. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). The Court considers each of the factors below.

### A. Strong Likelihood of Success on the Merits

In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation. *Six Clinics*, 119 F.3d at 402. In this case, the Court finds that Plaintiff PolyOne has failed to show a strong likelihood of success on the merits.

Case No. 1:10-CV-230
Gwin, J.

With its Complaint, PolyOne seeks a judgment declaring that it did not agree to arbitrate any disputes relating to the sale of the light camel color concentrate. [Doc. 1 at 11.] Thus, the outcome of PolyOne's claim depends on whether the contracts between the parties provide for arbitration of the warranty dispute. Plaintiff PolyOne advances two arguments in support of its position. First, the Plaintiff contends that the Initial Supply Agreement's terms and conditions—which do not contain an arbitration clause—govern this dispute. Second, the Plaintiff argues that even if the Final Supply Agreement controls the issue, it only applies to concentrate shipped after October 25, 2007. The Court finds neither of these arguments persuasive.

PolyOne's best argument is that the Final Supply Agreement served as an umbrella contract for all the parties' dealings except where another agreement existed and that the Initial Supply Agreement is such a pre-existing agreement, applying to the sale of a specific color concentrate. [Doc. 24 at 8.] Under this interpretation, the Court need only look to the terms and conditions of the Initial Supply Agreement because they alone govern the sale of the light camel color concentrate. If this argument is accepted, the IAC Terms, including the arbitration provision, would only apply to other transactions between the parties.

This argument is not without merit. For example, the Final Supply Agreement does state that the IAC Terms would apply to all purchases of products by IAC "except as otherwise provided." [Doc. 27-3 at 1.] Thus, the contract potentially preserved the Initial Supply Agreement's terms when a purchase fell under its purview. Other language in the Final Supply Agreement, however, casts doubt on PolyOne's interpretation of the contract. For instance, nowhere does the Final Supply Agreement identify the Initial Supply Agreement as an exception to the IAC Terms. In fact, the Final Supply Agreement contains a priority clause that states:

-5-

Case No. 1:10-CV-230
Gwin, J.

> In the event of any conflict between the terms and conditions contained in the foregoing documents, the following order of precedence shall apply: (a) this [Final Supply Agreement], (b) the applicable Orders, (c) the Terms, and (d) the Schedule 1 Agreements.

[Doc. 27-3 at 2.] By its terms, this provision applies broadly. The contract does not limit the priority clause to cases where only the Final Supply Agreement applies or where the IAC Terms undisputedly control. Instead, the contract states that any time the terms in any of the listed documents conflict, the Initial Supply Agreement, named exclusively in Schedule 1 and labeled only as a "Schedule Agreement" takes last priority.[2] [Doc. 27-3 at 3, 8.] Otherwise, no reason would exist to include Schedule 1 in the priority list.

The Court also finds unpersuasive the argument that the Initial Supply Agreement and Final Supply Agreement are one and the same—elevating the Initial Supply Agreement's terms to first priority. The language of the Final Supply Agreement says otherwise. In fact, the only portion of the Final Supply Agreement that mentions the Initial Supply Agreement is "Schedule 1, Existing Agreements." [Doc. 27-3 at 3.] Schedule 1, in turn, identifies "Other Agreements: See attached agreement and attachments between PolyOne and IACNA dated 2/2/2007 relating to color concentrate products in Exhibit C." [*Id.*] This structure belies any argument that the Initial Supply Agreement achieved equal status with the Final Supply Agreement merely because it was physically attached.

Given the above contract structure, the Court concludes that where the IAC Terms conflict with the Initial Supply Agreement terms, the IAC Terms likely control. Nevertheless, PolyOne argues that even if the IAC Terms *potentially* control, those terms do not apply in this case because

---

[2] Contrary to the Plaintiff's contention, this interpretation does not render meaningless the entire Initial Supply Agreement. For example, the Initial Supply Agreement contains scale pricing for PolyOne products not subject to the product pricing adjustments made in the Final Supply Agreement. [Doc. 27-3 at 4, 12-25.]

-6-

Case No. 1:10-CV-230
Gwin, J.

PolyOne shipped color concentrate pursuant to "pull tickets" and not "purchase orders," as contemplated by the IAC Terms and the arbitration agreement itself. [Doc. 24 at 8.]

First, the Court finds that the IAC Terms apply, not because of any provision in the terms themselves, but because the Final Supply Agreement expressly incorporates them and gives them priority. Thus, whether Defendant IAC used pull tickets or purchase orders, the IAC Terms apply to "all purchases of products by IACNA from PolyOne except as otherwise provided."[3/] [Doc. 27-3 at 1.]

Turning next to the arbitration provision in the IAC Terms, those terms state:

> **Arbitration**. All disputes arising under or in connection with any Order or any other document pertaining to any Order shall be finally settled by arbitration in Southfield, Michigan, before a single arbitrator appointed by the American Arbitration Association ("AAA") which arbitration shall be conducted under AAA's commercial arbitration rules then in effect at the time of the Order . . ..

[Doc. 21-2 at 23.] The IAC Terms define "Order" as a "purchase order." [*Id.* at 1.]

As the Sixth Circuit has repeatedly noted, "The law requires [courts] to resolve ambiguity concerning the scope of arbitration issues . . . in favor of arbitration." *JDP, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 391 (6th Cir. 2008) (holding agreement to arbitrate disputes over accounting calculations and "all issues having a bearing on such dispute" broad enough to require arbitration of separate claim that improper accounting led to loss of bonus payment); *see also NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 813 (6th Cir. 2007).

Under this broad standard, the Court finds that the arbitration provision likely covers the parties' warranty dispute. First, at least some evidence in the record indicates that Defendant IAC sent purchase orders for the light camel colorant to PolyOne. Although PolyOne employee Robin

---

[3/]The Court has already concluded that PolyOne is unlikely able to show that the "otherwise provided" language encompassed the Initial Supply Agreement and its terms.

-7-

Case No. 1:10-CV-230
Gwin, J.

Noftz testified that the particular purchase order offered in evidence by the Defendants did not list the correct colorant, Noftz declined to say that IAC never sent a purchase order covering the allegedly-defective light camel color. [Tr. at 71.] Moreover, the parties' dispute arises under the Final Supply Agreement, which in addition to incorporating both the Initial Supply Agreement as well as any orders issued, arguably "pertains to any Order."

Accordingly, the Court finds that the Plaintiff is unlikely to succeed on the merits of its claim that the arbitration provision does not apply to any of the sales of light camel colorant or govern the warranty dispute.

Nevertheless, PolyOne argues that even if the arbitration provision governs, it only applies to colorant shipped after October 25, 2007, the date the parties signed the Final Supply Agreement. The Final Supply Agreement, however, provides: "The term of this [Supply Agreement] shall be from March 1, 2007, to December 31, 2010. . . . This [Supply Agreement] supersedes all prior supply agreement between PolyOne and IACNA." [Doc. 27-3 at 1.] The contract further states: "The [IAC] Terms will govern all purchases of products by IACNA from PolyOne except as otherwise provided herein." [Doc. 27-3 at 1.]

Contrary to PolyOne's argument, this language indicates that the Final Supply Agreement retroactively applied to all shipments of color concentrate made from March 1, 2007. *Cf. Sec. Watch, Inc. v. Sentinel Sys.*, 176 F.3d 369, 373-74 (6th Cir. 1999) (holding merger clause alone inadequate to indicate retroactivity but noting that parties could have explicitly provided that contract would apply to prior dealings). In fact, PolyOne provides no other explanation for the inclusion of the "March 1, 2007, to December 31, 2010," language in the contract.

Because the Final Supply Agreement contains an arbitration provision and because that

Case No. 1:10-CV-230
Gwin, J.

agreement and provision likely apply to all sales of color concentrate from Plaintiff PolyOne to Defendant IAC between March 1, 2007, and December 31, 2010, the Court finds that PolyOne has failed to meet its burden to show a strong likelihood of success on the merits of its claim.

### B. Irreparable Harm

Plaintiff PolyOne contends that "Without the issuance of an injunction, PolyOne will suffer irreparable harm in being forced to expend monetary and human resources to defend itself in an arbitration proceeding to which it did not agree." [Doc. 11-1 at 12.]

As the Court has already concluded, however, PolyOne is not likely to succeed on its claim that it did not agree to the arbitration. Thus, PolyOne cannot argue that it will be irreparably harmed by arbitrating a claim it has likely agreed to arbitrate. *See, e.g.*, *Pritchard v. Dent Wizard Int'l Corp.*, 275 F. Supp. 2d 903, 919 (S.D. Ohio 2003) ("There is nothing inherently unfair, however, about being required to participate in arbitration, especially where one has contractually agreed to resolve disputes via arbitration."); *see also Wiepking v. Prudential-Bache Sec., Inc.*, 940 F.2d 996, 999 (6th Cir. 1991) (noting that plaintiff does not suffer "irreparable harm" by being "subjected to the expense of obtaining an arbitration award that ultimately proves to be unenforceable as wrongly ordered").

Moreover, this is not a case where PolyOne will suffer some abstract injury, such as interference with customer relationships, *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007), or non-actionable retribution. *Babler v. Futhey*, 669 F. Supp. 2d 873, 884 (N.D. Ohio 2009).

Accordingly, the Court finds that PolyOne will suffer little if any harm if required to continue with the arbitration proceedings.

### C. Substantial Harm to Others & Public Interest

Case No. 1:10-CV-230
Gwin, J.

Similarly, issuing an injunction in this case would not substantially harm Defendant IAC or others. The instant case is a commercial contract dispute that does not involve any third parties. Although the Defendant has an interest in the efficient resolution of its warranty dispute with the Plaintiff, requiring Defendant IAC to wait for a judicial determination of arbitrability does not unduly harm it. Instead, it merely preserves the status quo.

As to the public interest, both parties have important public concerns in their favor. On one hand, the public benefits from the enforcement of contracts and the protection of the right to a jury trial. On the other, the public benefits from the enforcement of federal law, including the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Taken together, these two factors weigh slightly in favor of granting the injunction. Nevertheless, these factors are outweighed by the fact that the Plaintiff has not shown a strong likelihood of success on the merits and has not shown that it would suffer irreparable harm were the arbitration to continue.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** the Plaintiff's motion for a preliminary injunction.

IT IS SO ORDERED.

Dated: March 29, 2010          s/ *James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE